**COMBE INCORPORATED, Plaintiff,**

v.

**SCHOLL, INC., Defendant.**

**No. 77 Civ. 5692.**

United States District Court,
S. D. New York.

Feb. 10, 1978.

Bryan & Bollo, Stamford, Conn., for plaintiff; Roland T. Bryan, Harold E. Drumm, Marius J. Jason, New York City, Daniel R. Johnson, Gen. Counsel, Combe Inc., White Plains, N.Y., of counsel.

Rogers & Wells, New York City, Sidley & Austin, Chicago, Ill., for defendant; Stanley Godofsky, Leo A. Larkin, New York City, of counsel.

LASKER, District Judge.

In 1974, Combe Incorporated (Combe) introduced "Johnson's ODOR–EATERS"[1] ("ODOR–EATERS"), a shoe insole designed to eliminate foot odor. Since their appearance on the market, over twenty million pairs have been sold (testimony of Chapin Nolen, president of Combe, Tr. at 201). As is apparent from this statistic, as well as Combe's gross receipts for the sales of the insoles, $19,000,000. over a four year period (Nolen Tr. at 44),

"COMBE [has] . . . awakened, cultivated and satisfied the latent public need and demand for an insole that would provide relief to those who suffered from foot, sock and shoe odor." (Plaintiff's Post-Trial Brief at 9).

In 1977, Scholl, Inc. (Scholl) the renowned purveyor of goods for the feet, offered a competitive alternative, Dr. Scholl's "ODOR DESTROYING INSOLES"[2] ("Scholl-soles"). Combe responded by bringing this action, alleging violations of the Lanham Act, 15 U.S.C. § 1125(a) and the laws of the State of New York.[3] Jurisdiction is based on 15 U.S.C. § 1121, 28 U.S.C. § 1338(a) and (b), and the doctrine of pendent jurisdiction. A temporary restraining order was sought and denied. Subsequently, Combe moved for a preliminary injunction, and at the evidentiary hearing that was held on the motion, Combe urged two bases for the requested relief: (1) Scholl has adopted trade dress for its insole that is confusingly similar to Combe's and (2) that the representation that the Scholl innersole contains activated charcoal effective in filtering out and fighting foot odor is false. Since neither claim has been established to the degree required for a grant of preliminary injunctive relief, the motion is denied.

A preliminary injunction may be granted only on "a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting preliminary relief." *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973)

---

1. The quoted words appear on the box in which Combe's product is sold. There, "Johnson's" appears in upper case type, "ODOR EATER" in lower case. However, the visual impact of "Johnson's" is minimal (see, PX 3) and the impact of "ODOR EATERS" is striking. Accordingly, we have chosen to use type that conveys the impact.

2. The quoted words, which are on Scholl's package, do not appear in upper case. How-

ever, because of their outstanding visual impact, we have chosen to spell them out with capitals. See, *supra,* n.1.

3. The complaint also contains allegations of violations of both the Environmental Protection Act and the Sherman Act. These allegations were not relied on in support of the motion for a preliminary injunction.

(emphasis in original); *accord, Triebwasser & Katz v. American Telephone & Telegraph,* 535 F.2d 1356, 1359 (2d Cir. 1976).

In applying these standards, a distinction must be made between Combe's two claimed bases for relief. The evidence as to whether Scholl's trade dress may be confused with Combe's is, with the exception of possible future proof as to actual confusion, as complete as if the case had been tried. With regard to this issue, we find that Combe has not established that Scholl's trade dress is likely to be confused with its own.

The posture is different with regard to Combe's claim that Scholl has falsely advertised the characteristics of its insole. As to that subject, the parties may wish to put further evidence before the court. Applying the *Treibwasser* standard to the claim of false advertising, we find that Combe has raised important questions which may be a "fair ground" for further litigation, but that injunctive relief is nevertheless inappropriate because the balance of hardships does not tip in favor of Combe.

### I. *Trade Dress Similarity*

Whether the trade dress claim is viewed as a form of unfair competition or as a "false designation" within the meaning of 15 U.S.C. § 1125(a), the standard by which it is measured is the same, and the issue is whether similarities in packaging create a probability of confusion as to source of origin. *Bose Corporation v. Linear Design Labs, Inc.,* 467 F.2d 304, 309 (2d Cir. 1972); *L & L White Metal Casting Corp. v. Joseph,* 387 F.Supp. 1349, 1356 (E.D.N.Y.1975). A right to relief exists only "if the total impression of package, size, shape, color, design and name upon the consumer will lead him to confuse the origin of the product." *Jean Patou Inc. v. Jacqueline Cochran, Inc.,* 201 F.Supp. 861, 863 (S.D.N.Y.1962), *aff'd,* 312 F.2d 125 (2d Cir. 1963); see also, *Harold F. Ritchie, Inc. v. Chesebrough Pond's Inc.,* 281 F.2d 755, 762 (2d Cir. 1960); *Corning Glass Works v. Jeannette Glass Company,* 308 F.Supp. 1321, 1325 (S.D.N.Y.), *aff'd,* 432 F.2d 784

(2d Cir. 1970). With this standard in mind, we proceed to Combe's claims.

When ODOR–EATERS were introduced in 1974, Combe's marketing strategy was dictated largely by its desire to establish an identity for its product that would distinguish it from anything offered by Scholl, the dominant figure in the insole market. Another consideration was the practical problem of obtaining display space in supermarkets and drugstores, which allocate only a limited amount of shelf or floor area for the display of shoe insoles.

In its quest for distinctiveness, Combe decided to house its product in a box. Scholl products have traditionally been sold in flat packages covered with a clear wrapper. As Nolen testified,

". . . we always felt at the beginning that the way to separate ourselves . . . from the Scholl insole was to have our box package, our own identification and not be in the flat pack and we didn't think we had a prayer if we had gone out there with a flat pack to get distribution.

"If we had, we think there would have been even more confusion." (Tr. at 208)

As a solution to the problem of severely limited display space, Combe developed a product that would accommodate all shoe sizes and could be packaged in a single size box. This doubled as a factor of distinctiveness since Scholl insoles had been typically sold in discrete sizes, five for men and five for women:

"the most crucial element in our marketing or the most difficult problem we had to solve was the distribution problem at the outset and we came out with the one size for men and women and one side [sic] could be trimmed to almost any size, to accommodate any shoe, either men's or women's. This was unique." (Nolen Tr. at 31).

The box (PX 4B) in which the one-size-fits-all ODOR–EATER (PX 4BB) is currently sold features the tradename, "Johnson's," the trademark, "ODOR–EATERS", bits of descriptive language, (e. g., "Odor-

Destroying Comfort Insoles,"[4] "with miracle activated charcoal," "destroys foot odor"), descriptive illustrations front and back, and a guarantee.

Scholl introduced its competing product, Scholl-soles, on November 1, 1977. Like ODOR–EATERS, Scholl's odor insoles are sold in a box, and its dimensions are nearly identical to the one used by Combe. Printed on the box are .the tradename and logo, "Dr. Scholl's," the product designation, "ODOR DESTROYING INSOLES," descriptive phrases (e. g., "Activated Charcoal, in a concentrated layer, fights odor."), descriptive diagrams, and a guarantee. In short, every feature of the Combe box appears, although in different form, on the box used by Scholl (compare PX 4B and PX 10A). Combe claims that this feature-to-feature similarity is likely to confuse. Moreover, it claims that Scholl's use of a box (Scholl has never before employed a box to package one of its products, Nolen Tr. at 468) and Scholl's guarantee (Scholl has never before guaranteed one of its products, Nolen Tr. at 60) indicates an intention to imitate Combe's package.

■ Jack Scholl, executive vice president of the defendant corporation, testified that both the use of the box and the features of the box were dictated by market necessities, similar to those that had influenced Combe (Tr. at 356, 360, 370, 451, 452, 488). Scholl disavowed any bad faith attempt to confuse the public and testified that his company's package was a legitimate attempt to meet competition "head on" (Scholl Tr. at 468, 469, 502). Be this as it may, the absence of intent to confuse would not excuse the likelihood of confusion, if it exists, although the presence of such an intention would tend to imply likelihood, *Harold F. Ritchie, Inc. v. Chesebrough Pond's, Inc., supra,* 281 F.2d 755; *Maternally Yours v. Your Maternity Shop,* 234 F.2d

538 (2d Cir. 1956); *Ames Publishing Co. v. Walker-Davis Publications, Inc.,* 372 F.Supp. 1 (E.D.Pa.1974).

■ In any event, we find that Combe has not established that the packaging of the Scholl product is likely to confuse people into thinking that it originates with Combe. Although as stated above, each feature found on the ODOR–EATERS box appears in some form on the Scholl box, the overall impression of the two packages is distinctly different, and the overall impression is determinative. See, *Jean Patou Inc. v. Jacqueline Cochran, Inc., supra,* 201 F.Supp. at 863; *Corning Glass Works v. Jeannette Glass Company, supra,* 308 F.Supp. at 1325. The ODOR–EATERS box is orange and white; Scholl-soles are dressed in the traditional colors of Scholl, blue and yellow. The distinguishing impact of the color difference is arresting. Furthermore, the tradenames of the two manufacturers appear on the respective packages, and there can of course be no confusion of the name "Johnson's" with "Dr. Scholl's." The Scholl logo, "Dr. Scholl," printed in white on a blue, oval shaped background, appears prominently on the front of the Scholl box, and alone substantially limits the possibility or likelihood of confusion as to the origin of Scholl-soles. *See, Bose Corporation v. Linear Design Labs, Inc., supra,* 467 F.2d at 309. The product designations of the two insoles, which designations are the most prominent feature of either box, are entirely dissimilar in text and color: "ODOR–EATERS" is printed in black on Combe's product; "ODOR DESTROYING INSOLES" appears in white on the Scholl box. Furthermore, the less pronounced features of the two boxes, descriptive phrases and diagrams, differ in varying degrees, but there is a more than noticeable difference between even these minor elements.[5] All of the

---

4. These words are capitalized on the Combe box, but their visual impact is minimal. Therefore, we have used lower case type.

5. The overall impression of the backs of the boxes is entirely different. Combe's is occupied by a long text concerning the properties of

activated charcoal. Scholl's features a series of terse product descriptions, only one of which, a mere sentence long, concerns charcoal.

As for the visual similarity of the two products, that is irrelevant since, boxed and invisible as they are, they cannot be confused.

dissimilarities mentioned contribute to the overall impression of distinct difference.[6] In sum, Combe has failed to raise a serious question of likelihood of confusion.

Combe nevertheless contends that whatever the apparent, overall dissimilarity of the two boxes, a likelihood of confusion is created by Scholl's use of the phrase "ODOR DESTROYING INSOLES." "Odor destroying" originated with Combe to describe ODOR–EATERS and has been used regularly, deliberately and with substantial emphasis on Combe's boxes and in its advertising on television and in print. Scholl deploys this crucial phrase on every panel of its box. On the front panel, it is spelled out in the largest letters used anywhere on the package. Combe complains of Scholl's use because it believes that it (Combe) has acquired a protectable property right in the phrase. Because "odor destroying" received enormous emphasis in Combe's intensive advertising campaign, Combe alleges that it has acquired a secondary meaning: that is, that the public associates the phrase with Combe. Combe asserts that Scholl is unfairly reaping the harvest which Combe sowed.

Since 1974, Combe has spent over $9,000,000 on advertisement of ODOR–EATERS (Nolen Tr. 44). Of that amount, approximately $4,500,000 has been disbursed on four television commercials. Each of the commercials stresses (as does the print advertising; DX P, Q, R) the word "destroy" (or a derivative of that word) in conjunction with the word "odor," although only two of the television commercials and one of the printed advertisements contains the phrase

"odor destroying." (See PX 7A, 7C, and compare PX 7B, 7D; see also, Tr. at 38–41; and see DX P). "We spent as much time on that word 'destroying' as we did on our trademark," testified Nolen (Tr. at 70), and "that word destroy . . . was quite unique and quite important to us." (Id. at 35).

Whatever importance the phrase may have to Combe, however, there has been no showing that it has acquired any special or secondary significance to the *public*. Combe attempted to prove, through the testimony of its marketing expert, Dr. Harry E. Heller, that "the major thing people know about [ODOR–EATERS] is that the product will eat or destroy odor, that it is odor destroying . . ." (Tr. at 243). Dr. Heller's conclusion about the public's ideational association is based on two surveys in which the reactions of 99 consumers were recorded through the use of questionnaires (Tr. at 282; PX 13B, 14B). Responses to the questionnaires were tabulated and compiled (PX 13A, 14A). Neither the original questionnaires nor the data compilations make any reference to the phrase "odor destroying" (or any closely related phrase). Whether the original untabulated responses contained the phrase cannot be determined because Combe has not put those responses in evidence. Indeed, nothing in the record establishes either that the public identifies "odor destroying" with Combe or its product. Yet to prevail Combe must demonstrate "that the primary significance of the term in the minds of the consuming public is not the product but the producer." *Kellogg v. National Biscuit Co.*, 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938);

---

**6.** In an apparent attempt to urge that a lesser showing of similarity is required for a finding of probable confusion here, Combe argues that "[t]he range of permissible actions of competition available to a *dominant* company in an industry is more limited than is available to others in the industry because of the tendency of some acts to foreclose competitors from access to the market or customers or some other inherently anticompetitive tendency . . ." (Plaintiff's Post-Trial Brief at 23) (emphasis added). This dictum has been uttered only in cases where the defendant has been found to occupy a *monopoly,* not merely a *dominant,* position. See, *United States v. Aluminum Co.*

*of America*, 148 F.2d 416, 428 (2d Cir. 1945); *United States v. United Shoe Machinery Corp.*, 110 F.Supp. 295, 342 (D.Mass.1953), *aff'd,* 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954). No such finding has been made here with respect to Scholl. On the contrary, a strong argument could be made that odor insoles constitute a discrete submarket of the shoe insole market, and that the dominant position in that submarket is enjoyed by Combe, not Scholl. Moreover, where it has been found, as an objective fact, that one box is dissimilar to another, that dissimilarity persists whether the box is produced by a monopolist or an underdog.

see also, National Automobile Club v. National Auto Club, Inc., 365 F.Supp. 879, 884 (S.D.N.Y.1973).

In the case at hand, Combe's advertising budget and the dress of its product (which includes the phrase "odor destroying") are the only evidence which support the claim of secondary meaning. We find that the phrase "odor destroying comfort insoles" is dwarfed by the other printed text on the Combe box. As a distinct and recognizable feature, it is insignificant. Proof of extensive advertising is alone insufficient to establish secondary meaning, see Roux Laboratories, Inc. v. Clairol Incorporated, 427 F.2d 823, 829 (Cust. & Pat.App. 1970), especially where, as here, a highly descriptive phrase questionably capable of acquiring secondary meaning is composed of two extremely unremarkable words.

## II. False Advertising

Combe alleges that since "DR. SCHOLL's 'activated charcoal' does not perform [odor destroying ] functions, the claim that its insole product has 'activated' charcoal in a concentrated layer and 'filters' out odor is false and misleading . . ." (Plaintiff's Post-Trial Brief at 24). It is undisputed that charcoal destroys odor only when the odor is exposed to it (testimony of Dr. Herbert Lapidus, technical director and vice president of product development for Combe, Tr. at 304). At trial, Combe attempted to prove that the charcoal in Scholl-soles is ineffective because it is trapped and isolated in an impermeable layer of rubber.

Scholl soles consist of three strata, a bottom layer of latex foam, a middle layer of rubber that is saturated with activated charcoal, and a top layer of loosely woven cloth (testimony of Donald Hartung, director of research and development for Scholl, Tr. at 520–23). Spaced evenly over and through the surface of the insole are roughly 700 perforations (Hartung, Tr. 534; PX 10B).

Combe contends, and it is undisputed, that in the area between the perforations, the Scholl sole is impermeable, both to air and water, which transport odor molecules (Lapidus Tr. at 308–14, 317–18; Hartung Tr. at 543, 548, 549, 574, 577), and that accordingly, it is impossible for odor molecules to reach the activated charcoal—so that Scholl's product claim, "Activated Charcoal, in concentrated layer, fights odor" is untrue.

However, contrary to Combe's contention, the impermeability in the unperforated area does not necessarily make the charcoal particles, imbedded in the opaque middle layer, unavailable to odor molecules. The fact is, and we find, that:

"in the process of creating [the 700 perforations], billions of particles of activated charcoal are exposed (Hartung, Tr. pp. 532). Furthermore, large quantities of activated charcoal are exposed around the edges of the insole either as initially die cut by Scholl . . . or as subsequently trimmed by the consumer. (Hartung, Tr. pp. 532, 534–5)." (Defendant's Post-Trial Brief at 19; see also DX SS).

Hartung's testimony, which soundly rebuts Combe's contention that Scholl's activated charcoal is uselessly submerged in a sea of impermeable rubber, is uncontradicted. Nevertheless, Combe argues that Hartung's analysis is questionable because (1) the charcoal particles are orders of magnitude smaller than the cutting blade with which the perforations and perimeter cuts are made and (2) the total surface area of charcoal saturated rubber that is exposed by cutting comes to only two square inches.

Aside from the fact that Combe's attack relies on facts not of record (for example, the width of the finest cutting blade), the argument that a cutting instrument cannot expose, either by crushing or cleaving, particles whose width is exceeded by that of the blade, is unpersuasive. As for the claim that the area of exposed charcoal layer is insufficient to effect reduction of odor, Combe has made no showing as to how much charcoal reacting surface is necessary to produce significant odor reduction. In sum, the argument based on permeability and the evidence offered thereupon fail to establish that Scholl's product claim is false.

Combe also challenges the reliability of data collected in a Scholl experiment that

measured the odor reduction capacity of Scholl-soles.[7] Combe's attack, which criticizes the control mechanisms and statistical techniques employed in the Scholl test, is one that may be levelled at any scientific experiment; at most, it puts the results in doubt. Combe's attack may or may not "disprove" the results of Scholl's experiment. But the truth of Scholl's experiment is not the issue before the court; it is the truth of Scholl's claims as to the property of its insoles that is before us. By disparaging the experiment, Combe has not demonstrated that the insoles themselves do not have the property which Scholl represents them to have.

### III. *Balance of Hardships*

We have found that Combe has not established likelihood of confusion between its product and Scholl's, and short of demonstrating actual confusion at a trial, we do not believe that, on the confusion issue, Combe has raised questions sufficiently serious to warrant injunctive relief.

We have also found that Combe has not demonstrated the falsity of Scholl's charcoal claims; but as to this issue, Combe has raised "serious questions going to the merits to make them a fair ground for litigation." *Sonesta Hotels Corp. v. Wellington Associates, supra,* 483 F.2d at 250. Nevertheless, we do not believe that injunctive relief is warranted on this ground either, since the balance of hardships does not tip in Combe's favor. If Combe's prayer for injunctive relief were granted, the injunction would either put Scholl entirely out of the market—at least until after trial and appeal (which would amount to months of paralysis at a critical time)—or would force Scholl to recall both its items currently on retail shelves and to incur the substantial expense of producing new packaging. In short, the consequences of an injunction against Scholl are measurable and heavy. On the other hand, if the injunction were denied, Combe's damage pending disposition of the case would be limited largely to a loss of sales (probably equal to the sales gained by Scholl since the two are the sole factors in the market). Combe would also face the speculative possibility of "dilution" because the public might look askance at charcoal insoles after being exposed to the allegedly inadequate Scholl product. As for loss of sales, the balance tips neither in Combe's nor in Scholl's favor. As for dilution, such a risk is too fanciful and uncertain to warrant the exceptional relief sought, particularly in light of the fact that although Combe may have raised serious questions concerning Scholl's product claims, it has by no means proven them false.

This memorandum constitutes the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

For the reasons stated, the motion for a preliminary injunction is denied.

It is so ordered.

---

7. The experimental results are contained in DXUU, and the experimental technique is described by Hartung, Tr. at 550–63.