JOHNSON & JOHNSON, Plaintiff,

v.

CARTER–WALLACE, INC., Defendant.

No. 78 Civ. 3986.

United States District Court,
S. D. New York.

Aug. 15, 1979.

---

**20.** The court will entertain requests for reasonable extensions of time.

Patterson, Belknap, Webb & Tyler by Thomas C. Morrison, Franklin H. Stone, Michael J. Ryan, Christine H. Miller, New York City, for plaintiff.

Breed, Abbott & Morgan by Stephen R. Lang, Paul J. Weiner, Robert S. Getman, New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff Johnson & Johnson (J&J) has brought this suit against Carter-Wallace, Inc. (Carter) under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and New York's law of unfair competition. J&J is the manufacturer of Johnson's Baby Oil and Johnson's Baby Lotion, among other products. Carter is the manufacturer of Nair, a depilatory. The controversy centers around the fact that Nair contains baby oil. Carter's advertising campaign for Nair has emphasized this ingredient. J&J alleges that Carter has packaged and marketed Nair in such a manner as to give consumers the false impression that Nair is a J&J product. J&J also alleges that Carter has made false claims for Nair. J&J's application for a temporary restraining order was denied. Plaintiff has moved for a preliminary injunction. This motion is denied.

*False Designation of Origin Claim*

Plaintiff's first claim is that Carter's use of a banner on the Nair bottle combined with use of the words "with baby oil" falsely designates the origin of the product as Johnson & Johnson. J&J claims that the advertisements for Nair reinforce this false impression.

Section 43(a) of the Lanham Act prohibits false designation of the origin of a product or any false description or representation "including words or other symbols tending falsely to describe or represent the same." The statute protects the interests of all persons faced with economic injury, not just the direct competitor. *Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)*, 544 F.2d 1167 (2d Cir. 1976). The test for false designation of origin requires the court to ask whether Nair's tradedress and advertisements are likely to confuse or deceive customers. *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160 (2d Cir. 1978). This is the same standard which applies in cases of trademark infringement. *Harold F. Ritchie Inc. v. Chesebrough-Pond's Inc.*, 281 F.2d 755, 761 (2d Cir. 1960). However, the purpose of the Lanham Act is "exclusively to protect the interests of a purely commercial class against unscrupulous commercial conduct . . . virtually without regard for the interests of consumers generally . . . ." *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686 (2d Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971).

Nair is sold in a pink plastic bottle. The word Nair is written in large letters in a shocking pink color. A bright turquoise blue banner contains the words "with baby oil". The banner is open at both ends. Johnson's Baby Lotion is sold in a plastic bottle of a slightly lighter shade of pink. The words "Johnson's baby lotion" are written in dark navy blue. A pink flag, with

one end open and the other closed, contains the words "softens and protects". Johnson's Baby Lotion does not contain any baby oil. Johnson's Baby Oil is sold in a clear plastic bottle with a paper label. The label is white. "Johnson's baby oil" is written in dark navy blue letters. A pink flag, identical to the one on the baby lotion bottle, contains the words "pure and gentle". The shapes of the three bottles are different.

Although J&J has a registered trademark for its flag design, it does not allege that Carter has infringed its trademark for that design. J&J contends that it is the combined effect of the "baby oil concept" and the allegedly similar flag that violates the Lanham Act.

J&J has erased the flag shape from the Baby Oil and Baby Lotion bottles in its depiction of such bottles in television and print advertising since 1966. This was apparently done by J&J's advertising company in order to improve the visual impact of the J&J name on the bottles.

Carter has been marketing Nair since the 1940's. In 1975 Carter began a new advertising campaign for Nair which emphasized its cosmetic nature. The first television commercial, "Short shorts", was broadcast in 1975 and 1976 and was very successful. Carter attributes the upturn in Nair sales to the success of the advertisement. In 1977 Carter added baby oil to Nair lotion. The three other formulations of Nair—cream, spray and foam—already contained baby oil. Baby oil constitutes approximately ten percent of Nair. The baby oil had been included in Nair initially to improve the consistency for application and to insure that the product would adhere to the hair shaft. In 1977 Carter also added "Noville", a new fragrance to Nair. In the same year Carter began to emphasize in its advertisements that Nair contained baby oil. Also in 1977, Carter showed a commercial called "Fire Escape". In 1978 and 1979 Carter showed a commercial called "Coney Island". All three of these commercials consist of several young women, dressed in clothing which reveals their legs (such as short shorts, baby doll pajamas, jogging suits) dancing and singing. The audio portion of the current commercial, "Coney Island", is as follows:

"Who's got baby oil?

Nair's got baby oil.

If you're a baby girl.

Nair with baby oil.

Nair with baby oil.

It takes off the hair so your legs feel baby smooth.

And Nair's baby-soft scent smells terrific, baby.

Who's got baby oil?

Nair's got baby oil.

Soft-smelling Nair with baby oil.

Nair for baby smooth legs."

At the end of the commercial, the words "from Carter-Wallace" are superimposed in small letters. The print advertisements for Nair are in the same format.

The court finds from a visual comparison of the J&J bottles and the Nair bottle that the overall impression of the products is substantially different. The different color schemes are distinctive. *Combe Inc. v. Scholl, Inc.*, 453 F.Supp. 961, 964 (S.D.N.Y.1978). The court finds that the use of banners, flags and ribbons of various designs and colors is common in the toiletries and pharmaceuticals industry. Such banners are used to highlight an ingredient or feature of the product, especially the addition of a new feature. The rule is that:

"common basic shapes such as circles, diamonds, triangles, squares, ovals, arrows, and the like have been so commonly adopted as marks or as part of marks for a variety of products in a variety of fields that whatever rights one possesses in such a design are confined to the particular design."

*Hupp Co. v. AER Corp.*, 157 U.S.P.Q. 537, 540 (P.O.T.M.T. & App.Bd.1968). The court finds that the two flags are dissimilar in both shape and color. Likewise the court finds that the tradedress of Nair, taken as a whole, does not tend to confuse the average observer as to the origin of Nair. *Bose*

*Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 309 (2d Cir. 1972).

■ Plaintiff urges the court to make a finding of likelihood of confusion as to origin based upon a consumer survey which it introduced into evidence. This survey was conducted in 1979 by Elrick & Lavidge, a nationally known consumer survey company. In that survey 1,490 women eighteen years or older were interviewed during February 1979 in shopping centers located in 13 cities throughout the United States. These women were randomly divided into three groups. One group viewed the 1978 "Coney Island" television commercial for Nair, the second group saw a print advertisement for Nair featuring women in jogging suits (Appendix) and the third group were shown a 4 ounce package of Nair lotion. Plaintiff also submitted a 1978 pilot survey in which 150 women were questioned. However, the court will focus on the 1979 survey conducted by Elrick & Lavidge (Pl's Exh. 101) in which 1,490 women were interviewed nationally as being more statistically accurate. The women were asked on an unaided basis "Who do you think manufactures or puts out this product?". In response, 28% of those who had seen the TV ad, 36% of those who saw the print ad, and 14% of those who had seen the package, answered "Nair". A smaller but nonetheless significant number answered that they believed J&J was the manufacturer of Nair (20%, 15% and 22% respectively). The women were also asked this question on an aided basis, that is they were given a list of six toiletries companies. In response, 62%, 61% and 58%, respectively, chose J&J as the manufacturer of Nair. Only 1%, 1% and 4%, respectively, chose Carter-Wallace. Carter contends that these responses should be considered in light of the fact that Carter does not advertise any of its products by the Carter-Wallace name but rather advertises each product, such as Nair, only by the product name so that there would be no reason for consumers to associate Carter and Nair. The women who mentioned J&J as the manufacturer in response to the unaided question were then asked "What makes you think so?" The overwhelming response was that the women thought J&J was the manufacturer of Nair because Nair contains baby oil (76%, 80% and 57%).

Carter attacks the Elrick & Lavidge survey on the ground that J&J has long been associated with baby oil due to its dominant position in the baby oil market for the last decade, and that the consumer survey only showed that those consumers who thought that Nair was manufactured by J&J thought so because they associated J&J with the term baby oil. Carter argues that J&J cannot benefit from this de facto secondary meaning attached to a generic term and prevent Carter from accurately stating that Nair contains baby oil. The court agrees that Carter's contentions cast doubt on the survey evidence introduced by plaintiff on the motion for preliminary injunction, especially in light of the court's own observation that the total impression of the Nair tradedress and advertisements does not give rise to confusion as to source.

■ Baby oil is mineral oil, with or without fragrance added for external use. Plaintiff and defendant are in agreement that baby oil is the generic term for mineral oil. The United States Trademark Association describes "baby oil" as a classic example of a generic term, 33 USTA Bull., No. 20, 5/11/78. The term baby oil was first popularized by Mennen. J&J began to market baby oil in 1935 after Mennen. Since that time J&J has been the major producer of baby oil, with a seventy-five percent share of the market for the last twelve years. Some twelve other companies market mineral oil under the name baby oil. J&J does not claim that it has any legally protectible right in the term baby oil alone. The court finds that baby oil is a generic name as the Second Circuit recently defined that term in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976), in relation to the Lanham Act.

> "A generic term is one that refers, or has come to be understood as referring, to the genus of which the particular product is a species."

Due to certain market conditions, a generic term can acquire secondary meaning, that is, become associated in the minds of the public with one producer of the product. Such secondary meaning is called "de facto secondary meaning". As McCarthy states in his treatise, Trademarks and Unfair Competition, § 12.15, at 432–33 (1973),

> "De Facto secondary meaning might arise during the period when a seller is the single source for a genus of goods. That is, during a period of time when one source is the only seller of a product, the public might associate the generic name of the product with the single source seller merely because there is no one else in the market . . . . The single source situation might arise . . . because the seller has patent rights which foreclose others. . . ."

There is evidence that J&J was the dominant producer of baby oil for a long period of time. Such evidence suggests that baby oil may have acquired an association in the minds of the public with the manufacturer, J&J. However, "de facto secondary meaning" is not legally protectible under the Lanham Act. As the Second Circuit stated in *Abercrombie, supra,* at p. 10,

> "At common law neither those terms which were generic nor those which were merely descriptive could become valid trademarks . . . . While . . . the Lanham Act makes an important exception with respect to those merely descriptive terms which have acquired secondary meaning, . . . it offers no such exception for generic marks . . . no matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name."

The Second Circuit then went on to find the term "Safari" generic with respect to hats and shirts. *See also Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938) ("shredded wheat" was a generic term which had acquired secondary meaning in the minds of the public due to long period of time in which only Kellogg manufactured shredded wheat. Such an interest was not legally protectible.)

In a situation in which a generic term has acquired de facto secondary meaning, a second manufacturer can benefit from a "free ride" due to the first manufacturer's efforts at prompting public acceptance of the product known by a generic name. Thus Carter can promote Nair as containing baby oil as long as it does not palm off Nair as a J&J product. The court finds that Carter has introduced sufficient evidence that J&J has promoted baby oil and baby lotion while in a dominant market position under the generic name baby oil to suggest that baby oil has acquired a de facto secondary meaning associated with J&J. Carter argues that this public association explains the survey evidence submitted by J&J which showed that those consumers who thought J&J manufactured Nair thought so because Nair was advertised as being "with baby oil". J&J contends that even if the court were to find de facto secondary meaning associating the term "baby oil" with J&J that the Elrick & Lavidge study shows that consumers were misled as to the source of Nair by the tradedress of Nair. The court finds that J&J has failed to prove this by a preponderance of the evidence.

In *King-Seeley Thermos Co. v. Aladdin Industries, Inc.,* 321 F.2d 577 (2d Cir. 1963), the Second Circuit found that the trademark "thermos" had become a generic term for a vacuum bottle. The court therefore allowed the defendant to use the word thermos in its advertising and tradedress as long as there was no attempt to deceive the public into thinking that its product was manufactured by plaintiff. In *Polo Fashions Inc. v. Extra Special Products, Inc.,* 451 F.Supp. 555 (S.D.N.Y.1978), the court found "polo" had become a generic term denoting certain types of shirts and coats. However

the court found that plaintiff had shown that defendant had used typestyle and label colors similar to plaintiff's distinctive material and had thus infringed plaintiff's trademark rights in the term "Polo by Ralph Lauren". The court finds that J&J has failed to show that Carter has used the words "baby oil" in such a way as to confuse consumers as to the source of origin of Nair. The court finds that the survey evidence was not sufficient, in light of the problems with the survey discussed above, to overcome the court's observation that the labelling and advertising of the two products were not confusingly similar. The addition of the words "From Carter-Wallace" to the advertisements on TV also reduces the likelihood of confusion as to origin.

*False Advertising*

Plaintiff contends that Carter is liable to it for false advertising in violation of § 43(a) of the Lanham Act, which prohibits a party from diverting "trade from a competitor by fraudulently representing that the goods which he markets have ingredients or qualities which in fact they do not have but which the goods of the competitor . . . do have." *Alfred Dunhill Ltd. v. Interstate Cigar Co., Inc.*, 499 F.2d 232, 246–47 (2d Cir. 1974). Plaintiff contends that Carter falsely advertises that baby oil as an ingredient in Nair has a moisturizing and softening effect on the skin of the user's legs. Plaintiff and defendant are in agreement that Nair does leave a user's legs smooth and soft and that this is due in large part to the effect of the ingredient thioglycolate which removes both leg hair and the outer layer of dead skin. Plaintiff does not contest that Nair leaves the skin soft, only whether baby oil as an ingredient contributes in any way to this effect.

From a reading of the Nair advertisements and a viewing of the television commercials, the court finds that Carter makes no explicit claim that baby oil is an effective moisturizing ingredient in Nair. Plaintiff rests its argument on a contention that the advertisements convey an implicit claim

for such benefits. Carter denies that it makes any such claims. In the alternative, Carter argues that plaintiff has failed to show that such a claim is false.

■ Section 43(a) encompasses more than literal falsehood. *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir. 1978). The Second Circuit stated in that case, "It is equally well established that the truth or falsity of the advertisement usually should be tested by the reactions of the public." *Id.* The court went on to quote with approval Judge Lasker's statement in *American Brands, Inc. v. R. J. Reynolds Co.*, 413 F.Supp. 1352, 1356–57 (S.D.N.Y.1976), " . . . the court's reaction [to the advertisement] is at best not determinative and at worst irrelevant. The question in such cases is—what does the person to whom the advertisement is addressed find to be the message?" Carter contends that it is exempt from any liability for the Nair advertisement on the theory that "a truthful and unambiguous product claim cannot be barred under Section 43(a) even though consumers mistakenly perceive a different and incorrect message". *Id.* However, the Second Circuit expressly refused to reach the issue of the validity of that theory in *American Home Products, supra*, on the ground that the advertisements in issue were not totally unambiguous. Similarly, in the instant case, the court finds that the Nair advertisements are somewhat ambiguous.

Therefore the court is compelled to consider whether consumers take away any implied messages from the advertisements. The burden is on the plaintiff to show that an implicit message is conveyed.

■ Both parties have submitted surveys of consumer reaction to the Nair advertisements. The Second Circuit upheld the lower court's use of such data as the most reliable evidence of consumer's perception of advertising messages in *American Home Products, supra*, 166–67, even though such data have some inherent weak-

nesses. As discussed above with reference to plaintiff's claim of false designation of origin, plaintiff submitted a consumer survey taken by Elrick & Lavidge in 1979. The form of that survey was set out above. The women respondents who were shown either the Nair Coney Island television commercial, a Nair print advertisement or the Nair package, were asked this question: "What ingredients do you think are contained in the product?" In response, 72% of those who saw the television ad, 64% of those who saw the print ad, and 51% of those who saw the package answered "Baby oil". These women who named baby oil as an ingredient in Nair were asked, "What, if anything, is good about having baby oil in the product?". Benefits relating to soft skin or legs were mentioned by 46% of those who were exposed to the TV ad, 37% of those who saw the print advertisement and 44% of those who saw the Nair package. The other benefits of having baby oil in the product which were most often cited related to moisturizing the skin or not causing it to dry out (31%, 28%, 30% respectively) and smoothing the skin or legs (24%, 27%, and 16% respectively). [Table 6, Pl's Exh. 101]. The number who mentioned pleasant fragrance was much smaller (6%, 4% and 5% respectively). Plaintiff contends that this survey demonstrates that consumers perceive an implicit claim that the baby oil ingredient moisturizes the skin in the Nair advertisements or on the Nair package. Defendant attacks this survey on the ground that it was not conducted in the homes of the consumers and did not simulate the normal viewing situation in which an advertisement is seen in the context of other advertisements. However, the court finds most compelling Carter's objection to the wording of the question, "What, if anything, is good about having baby oil in the product?". This question does not ask the consumer what claims were made for the baby oil ingredient in the advertisement but rather asks the consumer to speculate as to what benefits, not limited to those claimed in the advertisement, could be attributed to

baby oil. It is not disputed that baby oil does indeed soften, moisturize and smooth the skin when used directly on the skin. These benefits have long been promoted by J&J in its advertising. Thus to ask consumers what benefits they might attribute to the baby oil ingredient does not properly focus on the claims made in the Nair commercial. The probative value of the survey on the issue of what implicit claims are perceived by consumers in the advertisements is therefore reduced.

Carter submitted consumer recall tests conducted by Burke Marketing Research, Inc., a nationally known consumer survey company used by both Carter and J&J to test the effectiveness of their advertisements. Carter commissioned studies on the Nair television commercials in the regular course of business before the inception of this litigation. The first study, conducted in 1976, surveyed response to the Nair "Short shorts" commercial. This commercial made no reference to baby oil. The second study, conducted in 1977, concerned the Nair "Fire Escape" commercial. The third study, conducted in 1978, tested the effectiveness of the Nair "Coney Island" commercial. The latter commercial is being shown this summer, 1979, by Carter with the addition of a phrase indicating that Nair is a Carter-Wallace product superimposed on the picture at the end of the commercial in small letters.

The Burke studies were conducted by telephoning television viewers the day after the broadcast of a Nair advertisement. If the viewer is a woman between the ages of 12 and 35 who states that she saw the television program during which the Nair commercial was shown, she is then asked on an unaided basis to recall what the commercial stated. The consumer's reaction is thus tested under normal viewing conditions. Burke separates the consumers' answers into categories of proven, possible and unrelated recall. Defendant also introduced the verbatim answers by the consumers in the Burke tests which the court has read.

These two features of the Burke tests were specifically praised by Judge Stewart in *American Home Products, supra,* 436 F.Supp. 785, 794 n.4 (S.D.N.Y.1977), *aff'd,* 577 F.2d 160 (2d Cir. 1978). Plaintiff concedes that the Burke studies are widely recognized as highly effective means of identifying the message which consumers take away from television commercials.

The "Coney Island" commercial was broadcast during the television program "Rockford Files" on May 5, 1978. One hundred and three women were interviewed the next day in Boston, Kansas City and Saint Louis. The viewers were asked the following series of questions: "Now, please tell me anything at all you remember about the Nair commercial you saw last night. What did the commercial look like; what did you see in the commercial for Nair last night? What did the commercial say about Nair last night? What ideas about Nair were brought out in the commercial last night?". The Burke study did not show any significant consumer response attributing softening or moisturizing benefits to the baby oil in Nair. Twenty-one percent of the commercial audience recalled the message that Nair contains baby oil. Fifteen percent recalled the message that Nair leaves the legs smooth, soft or beautiful. However, only one percent stated that the message they perceived was "Nair leaves legs smooth because of baby oil/oil added for smoothness". Zero percent recalled these two messages: "Has baby oil to keep skin soft/puts baby oil into legs, makes them soft" and "Improved with baby oil to prevent dryness". Rather the messages which the consumers recalled were "Easy to use" (17%), "Removed Hair" (16%) and its scent (5%). In an earlier Burke survey of a commercial not at issue here, the 1977 "Fire Escape" commercial, an equally insignificant number of consumers, 8%, recalled a message attributing moisturizing benefits to the baby oil in Nair. In that survey 1% stated that the claim was "leaves legs smooth because of baby oil"; 5% recalled the claim "Has baby oil to keep skin soft"

and 1% recalled "improved with baby oil to prevent dryness". The court finds that the number of consumers who perceived an implicit claim for baby oil, as reflected in the Burke survey, is too small to be statistically relevant. *American Home Products, supra,* at 172 (survey evidence that only three of 43 women polled perceived implicit claim in cigarette advertisement insufficient to support a finding that such an implicit claim was made). The court further finds that the Burke studies are more relevant and probative on this issue than the Elrick & Lavidge study. The questions asked in the Burke study are more closely tailored to the issue at hand here, that is, what claims are made by the advertisements. The questions asked in the Elrick & Lavidge study did not focus on this question.

Plaintiff has submitted various internal memoranda of Carter-Wallace concerning the advertising campaign for Nair with Baby Oil. Plaintiff urges that this evidence establishes that Carter intended to convey the claim that baby oil was a moisturizing agent in Nair. While the intention of defendant is a relevant consideration, the evidence submitted by plaintiff must be weighed in light of the evidence submitted by defendant that it had changed the Nair advertising copy when its counsel suggested that the copy might be misunderstood to imply a specific claim for the baby oil ingredient. Therefore the court finds that, in light of the Burke studies, at this time plaintiff has failed to prove by a preponderance of the evidence that the Nair advertisements convey to the consumer a claim that the baby oil in Nair has a moisturizing effect. *American Home Products, supra,* at 172; *American Brands, Inc. v. R. J. Reynolds Tobacco Co.,* 413 F.Supp. 1352, 1357 (S.D.N.Y.1976). Since plaintiff has failed to show that it is likely to succeed on the merits of the contention that Carter makes such claims for the baby oil in Nair, the court need not reach the issues of whether plaintiff has shown that such claims are false, or of plaintiff's alleged laches in bringing suit.

*Conclusion*

■ In summary, the court finds that plaintiff has failed to prove by a preponderance of the evidence that it is likely to succeed on the merits of its two claims under the Lanham Act. The court finds that plaintiff has raised "serious questions going to the merits to make them a fair ground for litigation", *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973). However the court finds that plaintiff is not entitled to injunctive relief since it has failed to demonstrate that the balance of hardships tips in its favor. Nair is a seasonal product sold mainly during the summer months. To require Carter to refilm its television commercials and repackage its product would cause Carter considerable expense and cause it to be out of the market during its peak sales period. The injury to J&J during this period is more speculative. J&J contends that its baby oil is advertised as a shaving aid and as a moisturizer for the legs after shaving. J&J claims that sales by Nair will cut into the sales of Johnson's baby oil. However, depilatories account for only twelve percent of the hair removal market. Carter has been advertising Nair with baby oil as an ingredient for two years. As the court noted in *American Brands, Inc. v. R. J. Reynolds Tobacco, Inc.*, 413 F.Supp. 1352, 1360, ". . . we believe it to be of some significance that neither [party] has proffered any evidence that it has been damaged by loss of sales as a result of the advertising of its competitor-opponent. If the dire analysis which each of the parties predicates (sic) as to the advertising of the other were true, it seems reasonable to believe that evidence of such damage would exist." Robert Stites, president of Johnson & Johnson Baby Products Company, a division of J&J, testified at the hearing on the motion for a preliminary injunction that he did not attribute a loss in J&J baby lotion or baby oil sales to competition from Nair (Tr. 69), but rather attributed such loss to competition from lower priced brands of baby oil. J&J contends that it will suffer injury because of harm to the "baby oil concept". The possibility of such a "dilution" injury is "fanciful and uncertain" both factually and as a legal theory. *Combe Inc. v. Scholl, Inc.*, 453 F.Supp. 961, 967 (S.D.N.Y.1978). The court finds that the balance of hardships does not tip in J&J's favor. Therefore plaintiff's prayer for a preliminary injunction is denied. *Sonesta International Hotels, supra.*

Appendix to follow.

APPENDIX A

# Nair's got baby oil.
# You've got baby-smooth legs.

Get ready for smooth legs, baby!

Nair with Baby Oil goes on baby-soft and creamy. With a baby soft scent that smells terrific.

Nair with Baby Oil takes off the hair so your legs are baby-smooth.

The kind of smooth that keeps legs in the running, baby.

And now, you can run around in one of these great terry jogging suits. Only $5.75 each.

Choose yours from four different color combos and just mail in this coupon.

Nair with Baby Oil will send you a brand new jogging suit for running with your baby smooth legs.

## Nair's baby-soft scent smells terrific!

**Get your Nair Jogging Suits for only $5.75 each.**