**SHERRELL PERFUMERS, INC., Plaintiff,**

v.

**REVLON, INC., et al., Defendants.**

**No. 76 Civ. 4572 (RWS).**

United States District Court, S. D. New York.

Jan. 18, 1980.

Bass, Ullman & Lustigman, New York City, for plaintiff; I. Scott Bass, New York City, of counsel.

Arnold & Porter, Washington, D.C. for defendant Chanel, Inc; James F. Fitzpatrick, Paul S. Reichler, Michael T. Scott, Washington, D.C., of counsel.

Weiss, David, Fross, Zelnick & Lehrman, New York City, for Chanel, Inc.; Robert B. G. Horowitz, New York City, of counsel.

## OPINION

SWEET, District Judge.

Sherrell Perfumers, Inc. ("Sherrell") is a producer of perfumes which it has in the past advertised as copies of products by well-known perfumers such as Revlon, Inc., Chanel, Inc. ("Chanel") and Guerlain, Inc. Sherrell commenced this action in 1976 against a number of perfumers, several suppliers of perfume essences, including International Flavors & Fragrances, Inc. ("IFF"), and the Fragrance Foundation, a trade association of perfume companies. Sherrell alleges that the defendants conspired and combined to drive it out of the perfuming business in violation of the antitrust laws. Defendant Chanel has counterclaimed against Sherrell under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), alleging that Sherrell made false claims in its advertising.[1] Chanel now moves for summary judgment on its counterclaim and for an injunction against future false advertising by Sherrell. For the reasons discussed below, the motion is granted in part.

### A. *The Advertisements.*

Sherrell was founded in mid-1973 to produce and market copies of recognized perfumes, colognes and other toiletries. Sherrell initially purchased many of the essential oils for these products from IFF; IFF agreed to supply high-quality oils and to mimic the colors of name-brand products closely. Following disputes between IFF and Sherrell concerning the manner in which Sherrell advertised its products, IFF ceased selling oils to Sherrell in the Fall of 1974.

Thereafter, Sherrell hired Edward Silkin, a perfume chemist, to assist in the formulation of Sherrell fragrances. Sherrell sought to discover alternative sources for essential oils, but apparently had limited success. Sherrell also encountered increasing difficulty placing its advertisements in various newspapers. Sherrell discontinued business at the end of 1976, when this lawsuit was commenced.

Sherrell published advertisements in a variety of newspapers and magazines between December, 1973 and November, 1976. These included the Wall Street Journal, the Los Angeles Times, the New York Post, the New York Daily News, Parade Magazine, TV Guide, the Washington Post, the National Enquirer and McCall's.

Sherrell's advertising claims can be classed into two types of representations. The first class consists of comparisons between Sherrell products and other well-known perfumes. Sherrell advertised its perfumes as "Copy Cat Equivalent Fragrances," which it claimed were "copies of the world's most famous Perfumes and Colognes." One advertisement stated, "Copy Cat will save you 50% or more with superb perfume and cologne copies. Sherrell guarantees that only your checkbook will know the difference, and that the fragrances will last as long as the originals." Other advertisements claimed that Sherrell perfumes were "deluxe fragrance copies which are equal to the originals," "superb copies," and "faithful copies." In one advertisement, Sherrell asserted, "Sherrell's rare essential oils have been so carefully selected, blended and formulated that even the most sophisticated perfume expert would have great difficulty in telling 'Ours' from the imported originals."

A second group of representations concerns the origin of the ingredients contained in Sherrell products. One Sherrell advertisement claimed that "Our fragrances are compounded and made by many of the same firms that make the famous name brands that are sold in department and cosmetic stores." A second advertisement stated that Sherrell's products "are created

---

1. This court has subject matter jurisdiction of a counterclaim asserted under section 43(a) of the Lanham Act based on a claim of false advertising. 15 U.S.C. § 1121; *American Home Products Corp. v. Johnson & Johnson,* 577 F.2d 160 (2d Cir. 1978); *American Brands, Inc. v. R.J. Reynolds Tobacco Co.,* 413 F.Supp. 1352 (S.D.N.Y.1976).

specifically for us by *many of the same firms* who make the original French and American perfumes you buy in your department stores."

### B. *The Statute and Standards for Granting Relief.*

Section 43(a) of the Lanham Act provides in pertinent part:

> Any person who shall . . . use in connection with any goods . . . any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods . . . to enter into commerce, . . . shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a). Section 43(a) essentially provides a statutory cause of action for false advertising by any person likely to be injured by such advertising. *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir. 1978); *L'Aiglon Apparel v. Lana Lobell, Inc.*, 214 F.2d 649, 651 (3d Cir. 1954); *American Brands, Inc. v. R. J. Reynolds Tobacco Co.*, 413 F.Supp. 1352, 1356 (S.D.N.Y.1976).

■ It is well settled that there is no objection to one manufacturer's attempting to copy the unpatented formula of a second manufacturer's products. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231–233, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Smith v. Chanel, Inc.*, 402 F.2d 562 (9th Cir. 1968). Furthermore, "The Lanham Act does not prohibit a commercial rival's truthfully denominating his goods a copy of a design in the public domain, though he uses the name of the designer to do so." *Societe Comptoir de L'Industrie v. Alexander's Department Stores, Inc.*, 299 F.2d 33, 36 (2d Cir. 1962). *Accord Saxony Products, Inc. v. Guerlain, Inc.*, 513 F.2d 716, 722 (9th Cir. 1975); *Herbert Products, Inc. v. S & H Industries, Inc.*, 200 U.S.P.Q. 247, 249–50 (S.D.N.Y.1977).[2]

However, advertisements which declare that one product is a copy of, or similar to, another product are not immune from liability under Section 43(a) if these claims are untrue. In *Saxony Products, Inc. v. Guerlain, Inc., supra*, the producer of "Fragrance S," a purported copy of Shalimar perfume, commenced an action to establish that its advertisement of Fragrance S as "like" or "similar to" Shalimar perfume did not constitute a trademark infringement. The Ninth Circuit ruled that the district court had erred in granting summary judgment in favor of Saxony, the copier, since unresolved issues remained as to whether the claim of similarity was in fact true. The court stated that

> for purposes of comparative advertising Saxony could use Guerlain's trademark SHALIMAR to apprise consumers that Fragrance S is "LIKE" or "similar" to SHALIMAR. The use of Guerlain's trademark, however, constituted a violation of the Lanham Act if Saxony falsely represented that Fragrance S was "LIKE" or "similar" to SHALIMAR.

*Id.* at 722 (footnote omitted). On remand, the district court found in favor of Saxony on the factual issue of equivalence, a finding which was affirmed by the Ninth Circuit in *Saxony Products, Inc. v. Guerlain, Inc.*, 594 F.2d 230, 231 (9th Cir. 1979).

In *Chanel, Inc. v. Smith*, 178 U.S.P.Q. 630 (N.D.Cal.1973), the court ruled that advertisements representing that the perfume "Second Chance" "duplicated 100% perfect the exact scent" of Chanel No. 5, *id.* at 631, were untrue. The court relied principally on comparison of the gas chromatographs of the two perfumes. Based on its finding of non-equivalence, the court ruled that the defendant had violated Section 43(a) of the Lanham Act. *Accord Societe Comptoir de L'Industrie v. Alexander's Dep't Stores Inc., supra* at 34; *American Home Products v. Johnson & Johnson*, 436 F.Supp. 785, 791 (S.D.N.Y.1977), *aff'd*, 577 F.2d 160 (2d Cir. 1978); *Skil Corporation v. Rockwell Inter-*

---

**2.** Chanel makes no claim that Sherrell's advertising created confusion as to the origin of its perfumes as in *Fremont v. ITT Continental*

*Banking Co.*, 199 U.S.P.Q. 415 (S.D.N.Y.1977), and *CBS Inc. v. Springboard International Records*, 429 F.Supp. 563 (S.D.N.Y.1976).

*national Corp.,* 375 F.Supp. 777, 783 (N.D. Ill.1974).

In deciding whether a defendant has published false advertising in violation of Section 43(a), a district court must first analyze the meaning of particular representations and then determine whether the claims made are false. *American Home Products, Corp. v. Johnson & Johnson, supra,* 577 F.2d at 164–167. Although the tendency of a promotional to deceive should ordinarily be judged by public reaction, it has been held that, "If a statement is actually false, relief can be granted on the court's own findings without reference to the reaction of the buyer or consumer of the product." *American Brands, Inc. v. R.J. Reynolds Tobacco Company, supra,* 413 F.Supp. at 1356. In *American Brands,* the court granted an injunction against one manufacturer's advertisements which claimed that its cigarettes had lower tar content than all other cigarettes. A competitor introduced tests to prove that this representation was untrue as applied to its tobacco products. The court ruled that since certain of the claims made in the advertisements were literally false, and not merely confusing, relief could be granted without reference to surveys of public reaction. *Id.* at 1358–59. However, in the absence of "evidence of customer reaction," the court refused to grant an injunction against dissemination of other claims which, though grammatically true, had a tendency to mislead. *Id.* at 1357–59.

The Court of Appeals affirmed and clarified these principles in *American Home Products, Corp. v. Johnson & Johnson, supra,* 577 F.2d 160, which involved advertising purportedly stating that Anacin was superior in certain respects to Tylenol. However, the court ruled that the representations presented in the advertisements were ambiguous, and that accordingly the meaning of the advertisements, and their consequent truth or falsity, must be as-

sessed by reference to consumer reaction. The court held that there was sufficient evidence, based on consumer surveys, to support the district court's findings that: (1) consumers would interpret Anacin advertisements to mean that Anacin was a better pain reliever and analgesic than Tylenol; and (2) these claims were false. The court upheld the trial court's granting of injunctive relief against further dissemination of the advertisements.

### C. *The Comparative Advertisements.*

Chanel contends that the comparative advertisements published by Sherrell are literally false in that they represent in clear and unambiguous terms that Sherrell "Copycats" are superb and faithful copies of Chanel perfumes, that Sherrell perfumes are equal or equivalent to Chanel scents, and that one cannot tell the difference between the original perfumes and Sherrell's copies.

Recourse to consumer surveys is unnecessary in order to interpret the meaning of the comparative claims made in Sherrell's advertisements. These advertisements state in unambiguous terms that Sherrell produces "equivalent fragrances," "superb copies," "deluxe fragrance copies which are equal to the originals," and that "you can't tell the difference from the originals." They convey the unmistakable message that Sherrell perfumes have the same aromatic effect as the original fragrances, including perfumes produced by Chanel.[3] Sherrell has not disputed that the meaning of these words of comparison is clear and unequivocal. Thus, the only issue to be decided is whether there exists a factual dispute as to the falsity of that message.

In support of its motion for summary judgment, Chanel has submitted the following evidence:

(a) the affidavit of Emil Dieter, chief perfumist for Chanel,[4] comparing the gas

---

**3.** Consumers are presumably also concerned about other characteristics of perfumes, for example, color, perdurability and gentleness. However, the principal characteristic on which the truth or falsity of the comparative representations rests is the aroma of the two essences.

**4.** The Dieter affidavit avers that Dieter's duties as Chief Perfume Chemist for Chanel include

chromatographs of Chanel No. 5 and Sherrell No. 36 from which he concludes that the two essences have different chemical compositions;

(b) Dieter's affidavit in which he contrasts the smells of these two perfumes based on two organoleptic ("sniff") tests of the two perfumes;

(c) the laboratory notes of Sherrell's chief perfumist, Edward Silkin, in which he admits that Sherrell's fragrances are not superb copies of or equivalent to four Chanel scents, Chanel No. 5, Chanel No. 19, Chanel No. 22 and Chanel for Men; and

(d) the deposition testimony of Edward Silkin.

In opposition to this evidence, Sherrell has submitted:

(a) the affidavit of Dr. Frederick Reiters, an expert gas chromatographer, who disputes the conclusions drawn by Mr. Dieter from his comparison of the gas chromatographs of Sherrell No. 36 and Chanel No. 5;

(b) an excerpt from the official report of a hearing before the Senate Subcommittee on Monopoly on March 12, 1976, during which a certain Mr. Gordon states that his secretary was unable to distinguish Sherrell's copy from the original;

(c) the affidavit of Murray Poznak, President of Sherrell, describing the background of this litigation; and

(d) two internal memoranda written by IFF employees.

The second hand report by Mr. Gordon is not competent evidence in support of Sherrell's position. Mr. Gordon's statement as to what his secretary said is inadmissible hearsay. Furthermore, Mr. Gordon does not specify whether his secretary was comparing Sherrell perfume with a Chanel product, or with some other manufacturer's scent. Thus, the hearing report must be disregarded for purposes of this motion. Moreover, the Poznak and Bass affidavits provide no factual evidence concerning the comparative smells of Chanel and Sherrell products.

the evaluation and testing of raw materials and fragrances by organoleptic means, among oth-

In assessing whether a factual issue exists, the court has also given no weight to the deposition testimony of Mr. Silkin. Sherrell has raised a significant issue as to Mr. Silkin's credibility, upon which no ruling is proper in this procedural setting. *Schoenbaum v. Firstbrook*, 405 F.2d 215 (2d Cir. 1968) (en banc), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); 6 *Moore's Federal Practice* ¶ 56.15[4] at 56–519 (2d Ed. 1979).

The remaining evidence nevertheless establishes that no factual issue exists as to the falsity of the claims made in Sherrell's advertisements with respect to Chanel perfumes. The Dieter affidavit submitted by Chanel presents direct evidence to show that the fragrances of Chanel No. 5 and Sherrell No. 36 are not equivalent. Based on two organoleptic comparisons of Chanel No. 5 and Sherrell No. 36, Dieter concludes:

> There is a noticeable difference between the smell of genuine Chanel No. 5 and the Sherrell No. 36 which was sold as a Chanel No. 5 copy. The Sherrell No. 36 is less intense, less complete and substantially more "woody" than the Chanel No. 5. This reflects the absence in Sherrell No. 36 of certain elements in Chanel No. 5 and the inclusion in Sherrell No. 36's fragrance base of woody and sweet aromatic chemicals which are not used in Chanel No. 5.

Dieter, in his affidavit also states that he has compared the gas chromatographs of Chanel No. 5 and Sherrell No. 36. He concludes that the chemical compositions of these two substances differ and that because of this disparity, "it is my expert opinion that the odor of Sherrell No. 36 would not be comparable to that of Chanel No. 5 and that a noticeable and substantial difference in odors would exist."

In addition, Chanel has submitted the April 11, 1975 laboratory notes of Edward Silkin comparing Chanel fragrances with

ers. Sherrell has introduced nothing to dispute Mr. Dieter's qualifications as an expert "nose."

the scents of "Copycats." In comparing Sherrell No. 36 with Chanel No. 5, Silkin wrote, "not too bad—needs very little work to get closer to original." Silkin stated that Sherrell No. 23 "needs a little work to get closer" to Chanel No. 19. Sherrell No. 42 was "just barely passable," and "could be better" as a copy of Chanel No. 22. The contrast between Chanel for Men and Sherrell's M–10 was even greater; Silkin wrote that the Sherrell product was "not too good" and "needs a lot of work to get closer." These evaluations by Sherrell's own expert provide strong evidence that Sherrell's products were not equal to or faithful copies of Chanel fragrances.

In an attempt to contradict the conclusions reached by Chanel's chief perfumist and its own perfumist that Sherrell products were not equivalent to, equal to, or superb copies of Chanel products, Sherrell has presented the affidavit of Dr. Frederick Reiters. Reiters asserts that no conclusion can be drawn from comparison of the gas chromatographs of the two perfumes alone as to the equivalence of scent of the two formulas. This is primarily so because though the chemical compositions of two perfumes may differ slightly, not every chemical compound present in a perfume produces a scent. Reiters also points out that certain differences in the chromatographs of Chanel No. 5 and Sherrell No. 36 may have resulted from the manner in which the tests were performed and may not reflect real differences in chemical composition.

To be sure, this affidavit does raise a factual issue as to whether the gas chromatographs submitted by Chanel are useful in demonstrating that Sherrell No. 36 smells different from Chanel No. 5, and as to the conclusions expressed in the Dieter affidavit which are based on comparison of these gas chromatographs. However, the Reiters affidavit does not challenge the conclusions of Silkin and Dieter insofar as these are based on direct comparison of the smells of Chanel and Sherrell products.

Sherrell has also introduced two IFF internal memoranda describing orders made by Poznak. One memorandum, dated April 30, 1974, lists a series of IFF's standard essences or "book numbers" next to well-known fragrances and requests information as to the concentration of each book number necessary to make it "stronger than the target fragrance." The list includes Chanel No. 5. A second memorandum, dated August 12, 1974, calls for the sale to Sherrell of essences which "will be matches of the originals and where possible our selections should be our best *book numbers.*" The listed targets include Chanel No. 22. The memo also states, "They [Sherrell] understand that there are several fragrances that we will not be able to match too closely, but they would still like our best quality or an improvement over the original if possible." These internal communications do not raise a factual issue sufficient to preclude summary judgment. They do not make any specific comparison between the scents of Chanel products and the essences that IFF intended to provide. They indicate only that IFF was willing to provide its standard "book numbers" to Sherrell, but concede that at least some of these standard fragrances would not be close matches for originals.

Rule 56(c), Fed.R.Civ.P., provides that summary judgment on a counterclaim is appropriate "if the pleadings, depositions . . . and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In evaluating the evidence presented the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967). However, a party may not rely on "the mere allegations or denials of his pleading" to oppose "a motion for summary judgment made and supported as provided in . . . [Rule 56]." Rule 56(e), Fed.R.Civ.P.; *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir. 1972). The Court of Appeals has emphasized that in order to show that a factual issue exists,

an adverse party may not rest upon mere conclusory allegations or denials. The party opposing the motion must set forth "concrete particulars," *Dressler v. The MV Sandpiper*, 331 F.2d 130, 133 (2d Cir. 1964) . . . It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to the motion.

*S.E.C. v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978).

The single material issue which must be resolved in order to determine whether Sherrell has violated the Lanham Act is whether the claims that Sherrell's "Copycats" possess a scent equal or equivalent to, or are faithful or superb copies of, Chanel products are false. Chanel has introduced convincing evidence to show that these claims made in Sherrell's advertisements are false. Under these circumstances, it was incumbent upon Sherrell to come forward with some proof to dispute Chanel's evidence. Yet, Sherrell has presented no competent evidence which bears directly on the central issue of equivalence or faithfulness of aromatic effect. The most that could be inferred from the affidavits and exhibits introduced by Sherrell is that Sherrell was attempting to create superb copies of Chanel essences, but had fallen short of achieving its goal. Accordingly, Chanel's motion for summary judgment on its Lanham Act counterclaim is granted with respect to the comparative claims made by Sherrell.

### D. *The Representations of Origin.*

Chanel has also urged that no factual dispute exists as to the literal falsity of the claims of Sherrell that, "Our fragrances are compounded and made by many of the same firms that make the famous name brands that are sold in department and cosmetic stores," and that Sherrell's essences "are created specifically for us by *many of the same firms* who make the original French and American perfumes you buy in your department stores."

The principal evidence tendered by Chanel in support of this portion of its motion is the affidavit of Emil Dieter in which he states that Chanel has never purchased finished products either from IFF, the principal supplier of Sherrell, or from any other company.

However, unlike the representations considered above concerning the comparative qualities of products manufactured by Sherrell and other companies, Chanel has not sustained its burden of showing that the representations pertaining to the origin of Sherrell fragrances are clear and unambiguous, so that interpretation by the court is appropriate.

In particular, it is not clear whether the statements in the advertisements refer to finished products or essentials oils used to make final products. The representations also do not necessarily imply that the "famous name brands" mentioned include products produced by Chanel. The advertisements state only that Sherrell receives fragrances from "many of the same firms" that supply name-brand perfumers; they do not state that Sherrell receives fragrances from *all* of the same firms that supply nationally known perfumers. They also do not state that all name-brand perfumes are produced by companies that supply goods to Sherrell.

The manner in which these ambiguities are resolved by consumers determines whether these representations are false and misleading. For example, Chanel has submitted no evidence to prove that Chanel received none of its basic oils from companies which supplied Sherrell. Moreover, there has been no evidence proffered to show that finished name brand products other than Chanel are not produced by many of the same firms which supplied Sherrell.

It may well be that consumers would interpret these representations to mean that Sherrell purchases finished perfumes from the same sources as Chanel. Yet, where the representations are capable of divergent readings, at least some of which are grammatically true, reference to public reaction is essential to assess the meaning of the representations. 1 *Callmann: Un-*

fair Competition, Trademarks & Monopolies, ¶ 19.2(a)(1) (3d ed. 1967). As stated in *American Brands, Inc. v. R.J. Reynolds Tobacco Company, supra,* 413 F.Supp. 1352, 1357, "[T]he court's reaction is at best not determinative and at worst irrelevant. The question in such a case is—what does the person to whom the advertisement is addressed find to be the message?" Chanel has introduced no evidence bearing on consumer interpretation of the advertisements. The absence of any such evidence precludes a grant of summary judgment with respect to these representations. *American Home Products Corp. v. Johnson & Johnson, supra,* 577 F.2d at 164–166.

**E.** *Relief.*

■ Although Sherrell has neither produced perfumes, nor published any advertisements for over three years, Chanel contends that an injunction should issue to prevent future Sherrell advertisements that contain false comparisons. Chanel argues that Poznak, by his own admission, aspires to reenter the perfuming business and intends to continue advertising as he has in the past.

Injunctive relief is often appropriate to prevent prospective violations of the Lanham Act. In *American Home Products, supra* at 164, for example, the Court of Appeals affirmed the district court's entry of an injunction against publication of advertisements found to be false and misleading. Moreover, courts have approved injunctions restraining violations of the Lanham Act even when there was no showing that future violations were imminent. For example, in *Scotch Whiskey Ass'n v. Barton Distilling Co.,* 489 F.2d 809, 813 (7th Cir. 1973), the entry of an injunction against misleading labeling of goods was affirmed even though the defendant had discontinued the offensive conduct two years prior to trial.

In this case, it appears that Poznak intends to recommence production of "Copycat" fragrances in the near future and to utilize advertising techniques similar to those employed prior to halting business.

Mr. Poznak expressly stated in his deposition that this was his goal, and Sherrell does not seriously dispute this fact. Accordingly, specific injunctive relief is highly desirable in this case to restrain future violations of the Lanham Act.

Accordingly, Sherrell, its agents, servants, officers and all those in privity with it are enjoined from representing in advertisements that Sherrell products are "equal" or "equivalent" to Chanel products. The claims that Sherrell perfumes are "faithful" or "superb" copies of Chanel essences, that "you'll never know the difference" and that "even experts would have difficulty telling 'Ours' from the originals" are permanently enjoined with respect to Chanel fragrances.

Chanel shall submit a partial judgment and order, on notice, within ten days hereof, consistent with this opinion.

IT IS SO ORDERED.