**AMERICAN HOME PRODUCTS CORPORATION, Plaintiff,**

v.

**JOHNSON & JOHNSON, McNEILAB, INC., Defendants.**

**No. 87 Civ. 6970 (WCC).**

United States District Court, S.D. New York.

Oct. 19, 1987.

As Amended Nov. 4, 1987.

Arnold & Porter, Washington, D.C. (Stuart J. Land, Jack Lipson, Thomas J. McGrew, Douglas A. Dworkin, Peter Kautsky, Duane K. Thompson, Steven P. Lockman, of counsel), Morrison & Foerster, New York City (Jack C. Auspitz, Kim J. Landsman, Charles F. Hagan, William P. Woods, Egon E. Berg, of counsel), for plaintiff.

Patterson, Belknap, Webb & Tyler, New York City (David F. Dobbins, Gregory L. Diskant, Harmon Grossman, of counsel), for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This action, recently transferred from the Eastern District of Pennsylvania, seeks injunctive relief under Section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a), and the common law of unfair competition. Plaintiff American Home Products Corporation ("AHP") maker of the over-the-counter ("OTC") internal analgesic ADVIL, charges that defendant McNeilab, Inc. ("McNeil"), a wholly-owned subsidiary of defendant Johnson & Johnson and maker of the competing OTC analgesic EXTRA–STRENGTH TYLENOL, has published print advertisements and television commercials falsely claiming that EXTRA–STRENGTH TYLENOL is more effective for relief of headache and minor pain than other OTC analgesics including ADVIL.

The action is before the Court on McNeil's motion to dismiss the complaint on the grounds that (1) AHP is estopped from complaining about McNeil's advertising because it has itself published advertisements making identical claims of parity in efficacy, couched in the same negative language (*e.g.*, "nothing is better than ADVIL"), and (2) this Court, in a previous action between the same parties, has ruled that the very advertising claims of McNeil which are challenged here, are factually

correct, so that this action is barred by *res judicata.*

For the reasons discussed hereinafter, the motion to dismiss is denied.

*Background*

This action is but the latest skirmish in what this Court has described as the "endless war" between the parties seeking "commercial primacy in the OTC analgesic field." In five prior actions in this Court, one of the parties has charged the other with false or misleading advertising claims of relative superiority in efficacy and/or safety of its product. The latest of these actions to go to trial, *American Home Products Corp. v. Johnson & Johnson, et al.,* 654 F.Supp. 568 (S.D.N.Y.1987) ("Tylenol I") has been described as "the largest and most complex false advertising case ever tried."

In Tylenol I, after a one-month trial in which dozens of world-leading medical scientists testified in person and dozens of others by deposition, and hundreds of technical articles and learned treatises were introduced in evidence, the Court made explicit findings of fact as to, *inter alia,* the relative efficacy of EXTRA–STRENGTH TYLENOL (whose active ingredient is acetaminophen) and ADVIL (whose active ingredient is ibuprofen). Specifically, the Court found that:

(1) insofar as concerns severe pain, ADVIL is substantially more effective than EXTRA–STRENGTH TYLENOL; therefore it is false or misleading to state, as McNeil had done in its EXTRA–STRENGTH TYLENOL advertisements, that "You can't buy a more potent pain reliever without a prescription;"

(2) insofar as concerns headache and other forms of mild to moderate pain, there is no significant difference in effectiveness between EXTRA–STRENGTH TYLENOL and ADVIL; thus it would not be false or misleading to state that *"for mild to moderate* pain, you can't buy a *more effective* pain reliever without a prescription."

After discussions with the parties as to the proper wording of the injunction, the Court ordered:

Defendants are also enjoined from representing, implying or creating the impression that acetaminophen (1000 mg.) is as effective as ibuprofen (400 mg.) for severe pain. This injunction does not bar defendants from advertising unsurpassed or equal effectiveness of Extra–Strength Tylenol for mild to moderate pain or headache.

Both parties informed the Court that they did not intend to appeal from that order, which they could have done under 28 U.S.C. § 1292(a)(1) despite the fact that other issues remained to be decided, including McNeil's Ninth Counterclaim (charging that AHP's advertisements of its OTC analgesic ANACIN were misleading in failing to warn of the possibility that children or teenagers with flu or chicken pox who took an aspirin-containing product such as ANACIN might suffer Reye Syndrome), as well as the issue of damages on the claims already adjudicated.

Shortly after the order was signed, McNeil launched a new advertising campaign, both in the print media and on television, apparently attempting to go as far as the injunction allowed in claiming unsurpassed or equal effectiveness of EXTRA–STRENGTH TYLENOL for headache. Believing that McNeil had gone *too* far, on April 24, 1987, AHP's Vice President and General Counsel, Charles F. Hagan, wrote to Johnson & Johnson's General Counsel, George S. Frazza, complaining about (1) a television commercial in which it was asserted that "the largest headache test ever" concluded that "not even twice the initial recommended dose of ibuprofen is more effective than Extra–Strength Tylenol;" and (2) a print advertisement in "Q and A" form, reading in part, "1. Which Pain Reliever Is Strongest? The largest clinical headache study ever against ibuprofen confirms it. Nothing is more effective for headaches than Extra–Strength TYLENOL. Nothing." Hagan's letter stated that, in two consumer surveys a majority of the respondents indicated that they understood the television commercial to convey a message of superiority—*i.e.,* that EXTRA–STRENGTH TYLENOL is *more* effective than ibuprofen.

In the ensuing correspondence, Frazza, while insisting that the advertisements were not intended to, and did not, convey such a message, indicated that McNeil would clarify the wording of the advertisements "to avoid any unnecessary dispute." In May 1987, the television commercial was modified to drop the claim that "not even twice the initial recommended dose of ibuprofen is more effective than Extra–Strength Tylenol" and substitute the claim that "Extra–Strength Tylenol is unbeatable for headache. Nothing is more effective."

At about the same time, in the "Q and A" print advertisement, the first question ("Which pain reliever is strongest?") was modified to read "Which pain reliever has unbeatable strength for headaches?"

In this action, filed July 2, 1987, in the Eastern District of Pennsylvania, AHP charges that not only the original versions of the television commercial and print advertisement discussed above, but also the revised versions, convey to a substantial fraction of the audience a false message of superior effectiveness. AHP also makes a similar charge as to a "detail piece" which McNeil's detail representatives, in their visits to physicians beginning in about April 1987, displayed to, but did not leave with, the physicians. It is a four-page brochure bearing on the cover page the question, "What's the most effective OTC analgesic for headache pain?" The second page carried the answer, "No OTC analgesic is more effective for headache pain than EX-TRA–STRENGTH TYLENOL." This detail piece was used by McNeil for only a few months before it was discontinued.

Soon after the action was filed, McNeil moved for dismissal of the action on the same ground of *res judicata* pressed here or, in the alternative, for transfer of the action to this Court on the ground that this Court is more familiar with the subject matter and obviously in a better position to know what it ruled in Tylenol I and whether McNeil's new advertisements were consistent with the terms of the injunction entered therein. On August 31, 1987, Judge Norma Shapiro of the U.S. District Court for the Eastern District of Pennsyl-

vania granted the motion to transfer the action to this Court, but deferred decision on the motion to dismiss, agreeing that this Court was in a better position to decide it. Even before the file papers in the case had reached this Court in late September 1987, McNeil notified the Court of the pendency of its motion to dismiss and of its intention to file, in addition to the full set of papers it had already filed in the Philadelphia court in support of the motion, a supplemental brief. This it did on September 29, 1987, triggering a supplemental opposing brief from AHP, which in turn prompted a supplemental reply brief from McNeil.

*Discussion*

Both (1) McNeil's contention that AHP is estopped to complain of McNeil's negatively worded claims of equal efficacy (*e.g.*, "nothing is more effective than Tylenol") because AHP has made similarly worded claims in advertising ADVIL, and (2) McNeil's contention that AHP's complaint is barred by *res judicata* in view of this Court's decision in Tylenol I expressly approving a claim of "unsurpassed or equal effectiveness," suffer the same defect: they misstate the nature of AHP's complaint.

AHP is not seeking to prevent McNeil from claiming that EXTRA–STRENGTH TYLENOL is equally as effective as ADVIL in treating headaches and other types of mild to moderate pain—a claim which this Court has indeed expressly approved. Instead, AHP's complaint alleges that McNeil's latest advertising campaign for EXTRA–STRENGTH TYLENOL goes beyond claims of *equality* in effectiveness to claims of *superiority*. AHP relies not merely on the wording of the comparison between the effectiveness of EXTRA–STRENGTH TYLENOL and that of ADVIL, but on the *overall* message of the advertisements, including the context in which the comparative claims are made and the effect of the visual elements of the advertisements.

The merit of AHP's allegations must be determined not on the basis of an examination of the challenged advertisements by the Court, but on the basis of evidence as

the message which the advertisements convey to typical consumers. As Judge Lasker of this Court stated in *American Brands, Inc. v. R.J. Reynolds Tobacco Co.,* 413 F.Supp. 1352, 1357 (S.D.N.Y.1976):

> We are dealing not with statements which are literally or grammatically untrue; and the tendency to deceive alleged here does not arise out of possible confusion of one product with another. Rather, we are asked to determine whether a statement acknowledged to be literally true and grammatically correct nevertheless has a tendency to mislead, confuse or deceive. As to such a proposition "the public's reaction to [the] advertisement will be the starting point in any discussion of the likelihood of deception.... If an advertisement is designed to impress ... customers, ... the reaction of [that] group[s] will be determinative." 1 Callman: Unfair Competition, Trademarks & Monopolies at § 19.2(a)(1) (3rd ed. 1967). A court may, of course, construe and parse the language of the advertisement. It may have personal reactions as to the defensibility or indefensibility of the deliberately manipulated words. It may conclude that the language is far from candid and would never pass muster under tests otherwise applied—for example, the Securities Acts' injunction that "thou shalt disclose"; but the court's reaction is at best not determinative and at worst irrelevant. The question in such cases is—what does the person to whom the advertisement is addressed find to be the message?: Does the advertisement in question, the assertion "Now. 2 mg 'tar' is lowest" lead him to believe that Reynolds exclusively claims that no other cigarette is as low or lower in tar content? The fatal defect of both the American and Reynolds cases is that in neither instance has any evidence of substance been submitted which establishes the "determinative" reaction of the consumer to the respective advertisements.

While there may be cases in which the plaintiff's claims respecting the message which the defendant's advertisements convey to the consumer audience are so clearly unrealistic that the court can rule out any such construction as a matter of law, this is not such a case.

For example, the original television commercial referred to above included the claim that "not even twice the recommended dose of ibuprofen is more effective than Extra–Strength Tylenol." This claim was not expressly limited to effectiveness in treating minor pain such as headaches. Although it followed a reference to "the largest headache study ever," it is at least conceivable that many listeners took away the message that EXTRA–STRENGTH TYLENOL is at least as effective as ADVIL in treating all types and levels of pain. Indeed, the comparison of EXTRA–STRENGTH TYLENOL with "at least twice the recommended initial dose of ibuprofen" may have given some listeners the impression that EXTRA–STRENGTH TYLENOL is at least *twice* as effective as ADVIL.

The modified television commercial, while a significant improvement over the original, also raises questions requiring a trial. The claim that EXTRA–STRENGTH TYLENOL is "unbeatable for headache relief" goes farther than the Court's prior decision approved. It is one thing to say that A is equally as effective as B. It is quite another to say that A is "unbeatable," which goes beyond a comparison with B to claim, in literal terms, that nothing available now or in the future is or could be better.

In the original "Q and A" print advertisement referred to above, there was a large "Q" at the top of the page, immediately followed by the first question, "1. WHICH PAIN RELIEVER IS STRONGEST?" Although this question was followed by an answer which referred to effectiveness for headaches, the use in the question of the unqualified term "STRONGEST" may have given readers the impression that EXTRA–STRENGTH TYLENOL is the most potent pain reliever for treating all pain states. This impression was reinforced by the visual aspects of the advertisement. Balancing the large "Q" at the top of the page was a large "A" at the bottom alongside which was the picture of a bottle of EX-

TRA–STRENGTH TYLENOL. Some readers, turning pages quickly, may have noticed only the large "A" and the first question at the top of the page and then visually skipped to the large "A" and the bottle at the bottom. Anyone who did that likely got the impression that the question as to which pain reliever is strongest should be answered "EXTRA–STRENGTH TYLENOL."

As the Court ruled in Tylenol I, the claim that EXTRA–STRENGTH TYLENOL is as "potent" as Advil is false. *A fortiori*, any claim that EXTRA–STRENGTH TYLENOL is *"the* strongest" OTC pain reliever would be false.

While the Court ruled that it would be accurate to state that EXTRA–STRENGTH TYLENOL is equally as effective as ADVIL in treating mild to moderate pain, including headaches, that is a much different claim from the one made by McNeil. By way of analogy, although it may be accurate to state that a tack hammer is equally as "effective" as a sledge hammer for driving tacks, it would be misleading to claim that a tack hammer is equally "strong," and perhaps create the impression that it would be as useful for driving railroad spikes.

The modified "Q and A" print advertisement is a substantial improvement over the original, but still raises questions requiring trial. The new first question, "1. WHICH PAIN RELIEVER HAS UNBEATABLE STRENGTH FOR HEADACHES," although it now specifically refers to headaches, still talks in terms of potency rather than effectiveness and aggravates the problem by claiming unbeatability. To extend the analogy employed above, it is like claiming that a tack hammer has unbeatable strength for driving tacks.

The "detail piece" likewise cannot be ruled, as a matter of law, to be free of a tendency to mislead consumers. The question on the cover page, "What's the most effective OTC analgesic for headache pain?" shares the above-discussed defect that it used the singular article "the," thereby implying that EXTRA–STRENGTH TYLENOL stands alone, above all other OTC analgesics, including ADVIL, in effectiveness for treatment of headaches.

Moreover, the impression of superiority was strongly reinforced by the artwork in the brochure. Extending across pages 2, 3 and 4 was a stylistic graph bearing three curves of different colors, ostensibly representing the respective effectiveness of the three analgesics discussed in the brochure. The curve which was above the other two across the full width of the chart was colored red. Nothing else on these pages was colored red other than the word TYLENOL in large letters at the top of pages 2 and 4. This may have given readers the impression that the upper curve represented the effectiveness of EXTRA–STRENGTH TYLENOL and that it is more effective than both ADVIL and aspirin across the entire range of pain intensity levels.

While the detail piece, as well as the original television commercial and print advertisement discussed above, have been discontinued, AHP is entitled to seek an injunction to prevent their resumption and to a decision which delineates the limits of acceptability in such claims.

The Court does not mean to imply or adumbrate any opinion as to the merits of AHP's claims that the five McNeil advertisements involved in this action convey to consumers either the message that EXTRA–STRENGTH TYLENOL is more effective than ADVIL in treating headaches or other types of mild to moderate pain or the message that EXTRA–STRENGTH TYLENOL is equally as effective as ADVIL in treating more severe pain, but merely that AHP is entitled to a day in court to attempt to prove these claims.

*Conclusion*

For the reasons stated, McNeil's motion to dismiss the complaint is denied in all respects.

SO ORDERED.